# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:13-CV-00190-GCM

| | |
|---|---|
| MARY K. MCMAHAN, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> ) <br> **Defendant.** ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court upon Plaintiff Mary K. McMahan's ("Plaintiff") Motion for Summary Judgment (Doc. No. 9) filed on January 6, 2014, and Defendant Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment (Doc. No. 10) filed on February 28, 2014. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's ("ALJ") decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income benefits on May 31, 2011, alleging a disability onset date of May 15, 2010. Tr. at 106. The Commissioner originally denied those claims on July 27, 2011, and again on reconsideration on November 1, 2011. Tr. at 61, 68. Subsequently, on November 28, 2011, Plaintiff timely filed for a hearing before an ALJ, and

1

Administrative Law Judge S.D. Schwartzberg heard the case on October 10, 2012 in Kingsport, Tennessee. Tr. at 73-75, 23-34.

On October 22, 2012, the ALJ determined that Plaintiff was not disabled. Tr. at 8-22. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security. Tr. at 1-5. Plaintiff timely filed this action on July 10, 2013 (Doc. No. 1), and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind might accept as adequate to support a conclusion" and "more than a mere scintilla . . . , but may be somewhat less than a preponderance." *Id*. at 1456; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The very language of section 405(g) precludes the Court from reviewing a final decision of the Commissioner *de novo*; it is the responsibility of the ALJ and not the Courts to make findings of fact and to resolve conflicts of evidence. *See* 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court cannot substitute its judgment for that of the Commissioner, even if the Court would have decided differently, so long as the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

## III. DISCUSSION[1]

The Social Security Administration uses the Five Step Sequential Evaluation Process ("SEP") for determining disability claims. 20 C.F.R. § 404.1520. These five steps are:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). Here, the ALJ determined that Plaintiff was not disabled at Step Five of the process, having found that Plaintiff's impairments do not meet any of the impairments described in the Listing, that Plaintiff retained the residual functional capacity ("RFC") to perform simple, unskilled medium work, and that there were a significant number of jobs in the national economy that Plaintiff could perform. Tr. at 13-18.

Plaintiff asserts four issues for review—(1) the ALJ's consideration of Plaintiff's obesity; (2) the ALJ's development of the record as it pertains to Plaintiff's possible need for a psychiatric evaluation; (3) the ALJ's credibility determinations; and (4) the ALJ's findings concerning Plaintiff's RFC.

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

1. **The ALJ adequately considered Plaintiff's obesity and made determinations that are supported by substantial evidence.**

In making his or her determination, the ALJ must weigh all medical opinions, regardless of source. 20 C.F.R. § 416.927(c). Controlling weight is given to treating sources whose opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record. 20 C.F.R. § 416.927(c)(2). Plaintiff points to a single diagnosis of obesity from the Buncombe County Department of Health (*see* Tr. at 187) as a basis for her argument that the ALJ was required to incorporate Plaintiff's obesity into every step of the sequential process. However, Plaintiff's contentions are not supported in the record and misconstrue the Social Security Administration's ("Administration") guidance in *Titles II & XVI: Evaluation of Obesity*, SSR 02-1P (S.S.A. 2002).

The Department of Health's diagnosis of obesity was not entitled to any particular deference or special analysis by the ALJ, as the diagnosis does not detail a basis for that decision other than a high BMI of 27.2, which as Plaintiff concedes, does not even meet the Levels set forth in the SSR 02-01P's guidance. Tr. at 187-88. Moreover, none of the other physician opinions include a diagnosis of "obesity" or how this alleged impairment affects Plaintiff's function. To the contrary, Dr. Wall's opinion (which both state agency physicians noted, *see* Tr. at 43-50, 52-59) noted normal grip and muscle strength, and did not mention any sort of weight-related pain. Tr. at 173-74.

Additionally, Drs. Caviness and Woods, the state agency physicians upon whom the ALJ relied, did not connect Plaintiff's weight with any functional limitations, either separately or in conjunction with her other impairments. *See* Tr. at 43-50, 52-59. Per the regulations, the ALJ considered Plaintiff's diagnosis of obesity (Tr. at 16), but was not required to give the diagnosis any special deference as it did not set forth any sort of specific functional limitations and was

inconsistent with other substantial evidence in the case record. *See* 20 C.F.R. § 416.927(c)(2). This finding is also consistent with the Administration's SSR 02-1P ruling, which explicitly states that a diagnosis of obesity as a medically determinable impairment will be accepted "*in the absence of evidence to the contrary in the case record.*" SSR 02-1P at 3 (emphasis added).

Even assuming that the diagnosis of obesity was valid, the Fourth Circuit has long established that "[t]he applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). Plaintiff has not shown in any way how this diagnosis affects her other impairments. At no point during the hearing did the Plaintiff complain of how her obesity affects her day-to-day function, and none of the medical examinations include any complaints by Plaintiff concerning her weight. It follows that the ALJ was not required to consider an alleged impairment that Plaintiff did not substantiate. *See Pass*, 65 F.3d at 1203.

Because there was no basis for a diagnosis of obesity in the record, nor any discussion by the Plaintiff or a treating physician of how this alleged condition affected Plaintiff's functional capacity, this Court cannot assign error to the ALJ's decision as lacking substantial evidence.

2. **There is substantial evidence in the record to support the ALJ's mental health findings.**

The ALJ has a duty to explore the relevant facts and inquire into the issues necessary for adequate development of the record, but is not required to act as claimant's substitute counsel. *Bell v. Chater*, 57 F.3d 1065 (4th Cir. 1995) (unpublished table decision) (citing *Cook v. Heckler*, 784 F.2d 1168, 1173 (4th Cir. 1986) and *Clark v. Shalala*, 28 F.3d 828, 830-21 (8th Cir. 1994)). Moreover, as discussed *supra*, Plaintiff bears the burden of proof when establishing the existence of a disability. *See Pass*, 65 F.3d at 1203. Consequently, the Plaintiff also bears the "risk of nonpersuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1057 (4th Cir. 1976).

5

Plaintiff contends that Dr. Wall's recommendation for a psychiatric evaluation, coupled with Plaintiff's subjective reports of anxiety, mandated that the ALJ find mental limitations when determining Plaintiff's RFC. The ALJ discussed Plaintiff's alleged anxiety at length, finding that the Plaintiff had some anxiety-related limitations; ultimately however, none rose to a level of severity that would preclude her from all work activity. Tr. at 17. The ALJ's finding is consistent with the record—there was no evidence in the record of Plaintiff being seen for any mental health-related problems, of her seeking a psychiatric evaluation, or of her indicating that she has any mental trouble performing any sort of daily tasks. *Id*. The ALJ's conclusion that Plaintiff was not hindered by her alleged anxiety so as to prevent her from working was supported by substantial evidence.

As to Dr. Wall's recommended psychiatric evaluation, the ALJ is authoritatively positioned to weigh the opinions of the treating physician(s) against other each other and other evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). Dr. Wall's recommendation of a psychiatric evaluation came on the heels of Plaintiff's own subjective reports of anxiety; it provided no other basis for the recommendation or of how Plaintiff's anxiety could affect her functionality. *See* Tr. at 174. Further, Drs. Green and Wax specifically addressed Plaintiff's anxiety, both finding that Plaintiff's anxiety did not restrict daily living, social functioning, concentration, persistence, or pace. Tr. at 46, 55. To the extent that there was a conflict between Dr. Wall's recommendation and Drs. Green and Wax's findings, the ALJ had a substantial basis for finding that the evidence weighed in favor of Drs. Green and Wax's findings. *See* 20 C.F.R. § 416.927(c)(2). On the record before her, the ALJ found that the Plaintiff's anxiety did not prevent her from performing simple, unskilled work and that no further psychiatric evaluation was required, which decision was supported by substantial evidence.

3. **The ALJ's decision that Plaintiff's allegations of pain were not entirely credible was supported by substantial evidence.**

Plaintiff takes issue with two different aspects of the ALJ's decision regarding her pain and treatment—(1) that Plaintiff's alleged inability to pay for a specialist and overall minimal medical treatment should not factor into the ALJ's analysis; and (2) that the ALJ did not properly consider Plaintiff's subjective pain limitations. The Court addresses each of these in turn.

   a. **Lack of treatment is properly considered where the Plaintiff fails to establish insufficient means to obtain treatment.**

Plaintiff correctly asserts that a claimant's failure to seek treatment because of lack of funds cannot be held against her when making credibility determinations. *See* 20 C.F.R. § 404.1530(b); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984). However, implicit in that rule is the idea that a claimant has established "a good reason," i.e., that the claimant has shown an inability to pay for recommended treatment. *See Davis v. Apfel*, 162 F.3d 1154 (4th Cir. 1998) (unreported table decision) (citing *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring)). If no good reason is established, then the failure to seek treatment and follow medical advice is probative in the credibility analysis. *See* 20 C.F.R. § 404.1530(b); *Hunter*, 993 F.2d at 36.

The record reveals that Plaintiff failed to establish an inability to pay for medical treatment as well as failed to follow through with recommended treatment. She told Dr. Wall in April 2011 that she had not sought medical care since 1993, and that she did not use pain relievers, but did not state any financial hardship as a basis for not doing so. Tr. at 172. Plaintiff denied taking medication for her pain on numerous occasions, even after being prescribed painkillers. *See* Tr. at 185, 182-83. Plaintiff paid for one visit at Three Streams clinic in May

7

2012 using insurance and a copay of thirty dollars. Tr. at 180. Plaintiff's assertion that she has no income is also contradicted by the fact that she sells trees from her yard. Tr. at 172.

Significantly, *at no point* during the hearing or otherwise did Plaintiff specifically testify or make a showing that she was unable to seek medical treatment or fill prescriptions because of financial hardship. While she may not have a steady income or insurance (both of which are ambiguous in the record), this does not necessarily preclude her from being able to seek medical treatment; in fact, it appears that she did not have trouble seeking medical treatment, as evidenced by numerous medical visits. *See* Tr. at 172-210 (treatment records).

The ALJ noted many of these instances in her decision and that they weighed against Plaintiff's credibility; however, to the extent that the ALJ did not, the record demonstrates that Plaintiff's contention is at best a harmless error. *See* Tr. at 16-17; *Camp v. Massanari*, 22 Fed. App'x 311 (4th Cir. 2001) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000), requiring a showing that evidence might have led a different decision). Plaintiff must point to evidence that demonstrates that the ALJ would have reached a different decision had she properly considered it. *See Camp*, 22 Fed. App'x at 311. Moreover, Plaintiff's contentions erroneously rest on the assumption that the ALJ must discuss every piece of evidence that she considered; a proposition that has been rejected by the Fourth Circuit. *See Mclain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983). The ALJ's failure to mention Plaintiff's lack of insurance is irrelevant; as discussed *supra*, this fact does not necessarily demonstrate that Plaintiff was unable to seek medical treatment, and therefore does not necessarily improve her credibility. *See* Tr. at172-210. The mere lack of insurance does not conclusively show an inability to pay for medical treatment. Therefore, Plaintiff has not carried the burden of demonstrating that evidence in the record exists that would require a different decision by the ALJ. *See Camp*, 22 Fed. App'x at 311.

### b. Substantial evidence supports the ALJ's properly conducted determinations of Plaintiff's pain.

The Fourth Circuit has established a two-step process for evaluating subjective reports of pain—(1) "there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*[];" that once established, (2) "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996) (emphasis in original). The second step takes into consideration all of the available evidence, and objective evidence is crucial in the ALJ's evaluation of Plaintiff's pain, as an ALJ need not accept a claimant's allegations to the extent they are inconsistent with the available evidence. *Id*. at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4)).

Plaintiff asserts that the ALJ did not properly consider her allegations of pain, particularly in regard to Plaintiff's scoliosis and kyphosis. The ALJ specifically found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the *Craig* analysis. Tr. at 16; *Craig*, 76 F.3d at 594. However, at step two of the *Craig* analysis, the ALJ found that Plaintiff's impairments were not so severe as to preclude all work activity. Tr. at 16. The record reveals that Plaintiff did not seek specialist treatment; had normal gait, grip strength, muscle strength, and range of motion; and only sporadically used medication. Tr. at 173-74. Dr. Wall also noted that Plaintiff was able to drive and do all the activities of daily living, despite Plaintiff's testimony to the contrary.[2] *Compare* Tr. at 172 and 28-29.

---

[2] Plaintiff complains of the ALJ's notation in her decision that because Plaintiff has never worked, the ALJ had some doubt as to whether Plaintiff's current unemployment is "truly the result of medical problems." Tr. at 18. Although the Court finds that there is substantial evidence for the ALJ's credibility determinations without the

The law entitles the ALJ to weigh the entire record when determining a claimant's credibility concerning her pain, and here, the ALJ found that "claimant's allegations of pain and limitations . . . are based mainly on subjective complaints and not findings on examinations." *See Craig*, 76 F.3d at 595; Tr. at 18. For the foregoing reasons, the Court finds that substantial evidence in the record supports the ALJ's findings concerning Plaintiff's subjective reports of pain. Tr. at 18.

4. **There is substantial evidence in the record to support the ALJ's RFC findings.**

As previously noted, this Court is limited to determining whether there is substantial evidence to support the ALJ's determinations, and cannot re-weigh the evidence, even if it would have decided differently than the ALJ. *See* 42 U.S.C. § 405(g); *Smith*, 795 F.2d at 345; *Hays*, 907 F.2d at 1456; *Laws*, 368 F.2d at 642. Because the Court finds that there is substantial evidence for the ALJ's determinations regarding Plaintiff's obesity, mental health, and credibility, the only remaining portion of Plaintiff's contention concerning the RFC is Plaintiff's hypertension and ability to balance.

While it may be true that Plaintiff has high blood pressure, the ALJ noted that it is managed with medication and there were no long-term negative effects related to her hypertension regarding her ability to work. Tr. at 15. This is supported by the medical evidence, and more importantly, Plaintiff, who carries the burden of establishing how her hypertension affects her ability to work, offered no evidence that it prevents her from functioning, but merely

---

discussion of this issue, the Court does note that the ALJ seemingly noted yet another potential negative factor in determining Plaintiff's credibility—that she has not worked for a significant period of time, and therefore, it is an added wrinkle in the ALJ's ability to determine the necessary connection between the alleged impairments and the Plaintiff's ability to work. *See Craig*, 76 F.3d at 594. Despite the ALJ's misstatement of Plaintiff's work history (she did perform work in the 1970s), the fact that Plaintiff has not worked in over 40 years makes the ALJ's notation no less significant, nor does it affect the Court's ultimate finding of substantial evidence in support of the ALJ's decision.

speculates that her obesity and hypertension may have repercussions. *See Pass*, 65 F.3d at 1203; Tr. at 172-210.[3]

Concerning Plaintiff's ability to balance, *McLain* sets forth that objective medical facts such as medical opinions are a major part of the proof that the ALJ must consider. 715 F.2d at 869. However, the Administration has noted that there is a marked difference between what the adjudicator must consider and what the adjudicator must explain. *Titles II & XVI:II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernment*, SSR 06-03P (S.S.A. Aug. 9, 2006). The ALJ was not obligated under *McLain* or the regulations to adopt medical opinions verbatim, just as she was not required to discuss every piece of evidence that she considered. *See McLain*, 715 F.2d at 869; SSR 06-03P. Here, the ALJ actually restricted the unlimited exertion that the medical opinions originally set forth, while allowing for more balancing than they recommended. Tr. at 14.

Assuming *arguendo* that the ALJ did not properly pose hypotheticals with the appropriate balancing limitations, none of the occupations noted by the VE require balancing. *See* Laundry Worker, DOT No. 361.684-014; Bench Worker, DOT No. 616.485-010; Fish-Egg Packer, DOT No. 529.687-086. Therefore, there was no harm that prejudiced Plaintiff so as to require a remand. *See Camp*, 22 Fed. App'x at 311. The ALJ properly considered Plaintiff's hypertension and obesity, and regardless of how the issue of Plaintiff's balancing is framed, there was no reversible error. There is substantial evidence in the record to support the ALJ's conclusion regarding Plaintiff's RFC.

---

[3] Records from Three Streams repeatedly report Plaintiff's hypertension as "Benign" and offer no limitations on Plaintiff's function.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**, the Defendant's Motion for Summary Judgment, (Doc. No. 10) is **GRANTED**, and the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to **CLOSE THE CASE. SO ORDERED.**

Signed: October 20, 2014

Graham C. Mullen
United States District Judge